THE LAW OFFICES OF STEVEN C. VONDRAN PC
Steven C. Vondran, Esq. (SBN# 232337)
law@attorneysteve.net
620 Newport Center Drive, Suite 1100
Newport Beach, California 92660
Telephone: (877) 276-5084
Facsimile: (888) 551-2252

Attorney for Plaintiff: LORI STEELE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LORI STEELE, an individual<br><br>Plaintiff,<br><br>v.<br><br>LAW OFFICES OF SAM CHANDRA, a professional corporation; and WEDGEWOOD COMMUNITY FUND II, LLC, a California limited liability company and DOES 1 through 10 Inclusive,<br><br>Defendants. | Case No.: 2:13-cv-00005 GAF<br><br>Assigned to Hon. Judge Gary Allen Fee<br><br>**NOTICE OF UNPUBLISHED CASE RELIED UPON AS PERSUASIVE AUTHORITY IN SUPPORT OF OPPOSTION TO MOTION TO DISMISS COMPLAINT**<br><br>Hearing:<br>Date: March 11, 2013<br>Time: 9:30 a.m.<br>Dept: Courtroom 740 |

## MEMORANDUM OF POINTS AND AUTHORITIES

The Ninth Circuit Rule 36-3(b)(ii) permits the citation of unpublished dispositions "for *factual* purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, *or the existence of a related case.*" *Id.* (emphasis added). As the wording clearly indicates, this

1

exception permits the citation to an unpublished disposition where the very existence of the prior case is relevant as a *factual* matter to the case being briefed. As the list of examples suggests, the factual purposes falling within this exception will almost always involve one or both of the parties to the pending case. A prior disposition might show that the current defendant had been prosecuted for the same crime, or that a prior suit had put the defendant on notice of unsafe conditions on his property.

Although this decision is unpublished, Ninth Circuit Rule 36-3 does not bar a district court from considering the unpublished decisions of other federal district courts; however, such decisions are not binding and are considered persuasive authority. See *Sorchini v. City of Covina*, 250 F.3d 706 (9th Cir. 2001). Moreover, in the case of *C.B. v. Sonor School District*, 691 F.Supp.2d 1123 (E.D. Cal. 2009) the Court noted:

> "Although this decision is unpublished and out of circuit, Ninth Circuit Rule 36-3 does not bar a district court from considering the unpublished decisions of other federal district courts; however such decisions are not binding and are at most persuasive authority. *Herring v. Teradyne, Inc.,* 256 F.Supp.2d 1118, 1128 n. 2 (S.D.Cal.2002); see also, *Alvarenga-Villalobos v. Reno,* 133 F.Supp.2d 1164, 1167 (N.D.Cal.2000) (holding a district court may cite an out of circuit unpublished decision and not run afoul of the Ninth Circuit Rule 36-3)."

The Court also noted that Ninth Circuit Rule 36-3 provides:

(a) Not Precedent. Unpublished decisions and orders of the Court are not precedent, except when relevant under the doctrine of law of the case or rules of

NOTICE OF UNPUBLISHED CASES

claim preclusion or issue preclusion.

(b) **Citation of Unpublished Dispositions and Orders issued on or after January 1, 2007. Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with Fed.R.App.P. 32.1**

(c) Citation of Unpublished Dispositions and Orders Issued before January 1, 2007. Unpublished dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts of this circuit, except in the following circumstances.

(i) They may be cited to this Court or to or by any other court in this circuit when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.

(ii) They may be cited to this Court or by any other court in this circuit for factual purposes, such as to show double jeopardy, sanctionable conduct, notice, entitlement to attorneys' fees, or the existence of a related case.

(iii) They may be cited to this Court in a request to publish a disposition or order made pursuant to 9th Cir. R. 36-4, or in a petition for panel rehearing or rehearing en banc, in order to demonstrate the existence of a conflict among opinions, dispositions, or orders.

NOTICE OF UNPUBLISHED CASES

## NOTICE OF UNPUBLISHED CASES CITED IN BRIEF

1. *Cucci v. Edwards*, 510 F.Supp.2d 479, 486 (CD. Cal. 2007).

2. *Nassirpour F.D.I.C*, No. CV08-7164-GHK (AJWx), 2008 U.S. Dist. LEXIS 105940, at 8-9, n.1 (C.D. Cal. Dec. 29, 2008).

3. *Superbalife, Int'l v. Powerpay*, No. CV 08-5099, 2008 U.S. Dist. LEXIS 89204, at 3-5 (C.D. Cal. Oct. 7, 2008).

4. *Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.,* No. CV 09-2140 PSG (JCx), 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) *Valdovinos v. County of Los Angeles,* No. CV 06-7580 JVS (SHx), 2008 WL 2872648, at *2 (C.D. Cal., July 23, 2008).

5. *Rhodes v. Placer County* 2011 WL 1302240 (E.D. Cal. 2011).

Respectfully Submitted

Dated:      February 18, 2013          THE LAW OFFICES OF STEVEN C. VONDRAN, P.C.

                                       By:    /s/ Steven C. Vondran
                                              Steven C. Vondran, Esq.

                                       ATTORNEY FOR LORI STEELE

"1"

2008 WL 5412432
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
C.D. California.

Babak **NASSIRPOUR**, et al.
v.
F.D.I.C. AS RECEIVER FOR
INDYMAC BANK, FSB, et al.

No. CV 08-7164-GHK
( AJWx). | Dec. 29, 2008.

**Attorneys and Law Firms**

Russell F. Behjatnia, Russell F. Behjatnia Law Offices, Van Nuys, CA, for Plaintiff.

David R. Zaro, Joshua Andrew Del Castillo, Allen Matkins Leck Gamble Mallory & Natsis LLP, Los Angeles, CA, for Defendants.

**Opinion**

**Proceedings: (In Chambers) Order re: (1) Plaintiffs' Motion To Remand Case and (2) Defendant FDIC's Motion to Stay Case Pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii)**

GEORGE H. KING, District Judge.

*1 Beatrice Herrera, Deputy Clerk

This matter is before the Court on Plaintiffs Babak **Nassirpour** and Hossain Sahlolbei's (collectively "Plaintiffs") Motion To Remand Case ("Remand Motion") and Defendant FDIC's ("FDIC") Motion to Stay Case Pursuant to 12 U.S.C. § 1821(d)(12)(A)(ii) ("Stay Motion"). We have considered the papers filed in support of and opposition to both Motions and deem these matters appropriate for resolution without oral argument. L.R. 7-15. Accordingly, we rule as follows:

**I. Remand Motion**

The FDIC has a statutory right, subject to a narrow exception, to remove to federal court any action in which it is a party. *See Bullion Servs. Inc. v. Valley State Bank,* 50 F.3d 705, 707 (9th Cir.1995) ("[W]e have held 'that the grant of subject matter jurisdiction contained in the FDIC's removal statute evidences Congress' desire that cases involving the FDIC should generally be heard and decided in federal courts.' ") The one narrow exception to FDIC jurisdiction is the so called "state law exception." *Id* . Title 12 U.S.C. § 1819(b) (2)(D) provides that an action "(i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff; (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and (iii) in which only the interpretation of the law of such State is necessary, shall not be deemed to arise under the laws of the United States" and therefore, cannot be removed to federal court.

As is obvious from the plain meaning of the statute, the state-law exception is a three-part, conjunctive test. *See Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 785 (11th Cir.2005). Here, Plaintiffs cannot meet their burden of showing that all three criteria are met. *Id.* (noting that the "burden" on proving the three criteria in § 1819(b)(2)(D) shifts to the party objecting to removal after the prerequisites for removal under § 1819(b)(2)(B) are met).

Plaintiffs can never satisfy the first prong of the state law exception because IndyMac was not a California insured depository institution; it was a federally chartered savings bank. The FDIC was not appointed as receiver for IndyMac by a California State Agency, but instead by the Office of Thrift Supervision, a federal agency. Because a failure to satisfy even one of the three criteria defeats an objection to removal, Plaintiffs Motion to Remand is **DENIED**.

**II. Stay Motion**

Title 12 U.S.C. § 1821(d)(12)(A) states that:

In General

After the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed-

(i) 45 days, in the case of any conservator; and

"2"

2008 WL 4559752
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

## SUPERBALIFE, INT'L

v.

## POWERPAY.

No. CV 08-5099.   |   Oct. 7, 2008.

West KeySummary

1    **Federal Courts**
     Determination of Venue Questions

A broker's failure to comply with the local rule
requiring counsel to contact opposing counsel
to discuss thoroughly the substance of the
contemplated motion and any potential resolution
warranted denial of the broker's motion to
dismiss for improper venue, in an action for
breach of contract, fraud and deceit, conversion,
violation of the Civil Racketeer Influenced
and Corrupt Organizations (RICO) Act, and
unfair competition under California law. It was
inexcusable for the broker not to meet and confer
with the supplement company's counsel prior to
the broker filing a motion to dismiss. West's
Ann.Cal.Bus. & Prof.Code § 17200 et seq.

**Attorneys and Law Firms**

Gregory L. Doll, Doll Amir and Eley, Los Angeles, CA, for
**Superbalife, Int'l.**

Steven E. Bledsoe, Arent Fox LLP, Los Angeles, CA, for
**Powerpay.**

**Opinion**

## Proceedings: (In Chambers) Order on Defendant's Motion to Dismiss Under FRCP 12(b)(6)

The Honorable PHILIP S. GUTIERREZ, District Judge.

**\*1** Wendy K. Hernandez, Deputy Clerk.

Pending before this Court is Defendant's Motion to Dismiss.
The Court finds the matter appropriate for decision without
oral argument. Fed. R. Civ. Proc. 78; Local R. 7-15.

### I. BACKGROUND

Superbalife sells its herbal supplements both online and
in retail stores. In an effort to expand its online sales,
Superbalife hired Powerpay to help transfer its online credit
card sales to Superbalife's bank account. Powerpay's role
in the online sales process was as a broker ("ISO")[1] that
arranges the relationship between merchants and credit card
processing banks in order for Superbalife to receive the
proceeds from its online sales. However, in this particular
instance, Powerpay is a sub-ISO, meaning that Powerpay
partners with a larger ISO to solicit merchants for credit card
processing banks.

On August 4, 2008, Superbalife filed a claim against
Powerpay for breach of contract, fraud and deceit,
conversion, violation of the Civil RICO Act, and unfair
competition under California Business and Professional Code
section 17200 *et seq.* Superbalife alleges, *inter alia,* that
Powerpay has failed to pay Superbalife more than $187,000
due to Superbalife. Powerpay now moves to dismiss subject
to Federal Rule of Civil Procedure 12(b)(3), improper venue,
on the ground that the parties entered into a contract
containing a forum-selection clause for Nassau County, New
York.

### II. LEGAL STANDARD

Local Rule 7-3 states, in relevant part:

> [Unless otherwise provided for in
> these Rules], counsel contemplating
> the filing of any motion shall first
> contact opposing counsel to discuss
> thoroughly, *preferably in person,* the
> substance of the contemplated motion
> and any potential resolution. If the
> proposed motion is one which under
> the F.R.Civ.P. must be filed within a
> specified period of time (*e.g.,* a motion
> to dismiss pursuant to F.R.Civ.P.
> 12(b)) ... then this conference shall
> take place at least five (5) days prior
> to the last day for filing the motion;

"3"

2009 WL 3346784
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

ALCATEL-LUCENT USA, INC. et al.
v.
DUGDALE COMMUNICATIONS, INC.

No. CV 09-2140 PSG (JCx).  |  Oct. 13, 2009.

## Attorneys and Law Firms

Jesse A. Kaplan, Michael A. Taitelman, Freedman and
Taitelman LLP, Los Angeles, CA, for Plaintiff.

Alan Cooper, Ervin Cohen & Jessup, LLP, Allan B. Cooper,
Ervin Cohen & Jessup, Beverly Hills, CA, Mark R. Waterfill,
Dann Pecar Newman and Kleiman PC, Indianapolis, IN, for
Defendant.

## Opinion

## Proceedings: (In Chambers) Order Denying Defendant's Motion to Dismiss for Lack of Service of Process

The Honorable PHILIP S. GUTIERREZ, District Judge.

*1 Pending before the Court is Defendant's Motion to
Dismiss for Lack of Service of Process. The Court finds the
matter appropriate for decision without oral argument. *See*
Fed.R.Civ.P. 78; L.R. 7-15. After considering the moving and
opposing papers, the Court DENIES Defendant's motion.

## I. *Background*

On March 27, 2009, Plaintiffs Alcatel-Lucent USA,
Inc. and Genesys Telecommunications Laboratories, Inc.
(collectively, "Plaintiffs") filed suit against Defendant
Dugdale Communications, Inc. ("Defendant") for breach of
contract and other related claims. After filing the complaint,
Plaintiffs continued settlement negotiations with Defendant,
but were unable to reach an agreement. On July 17, 2009,
after negotiations stalled, Plaintiffs attempted to substitute
serve Defendant with the First Amended Complaint ("FAC"),
leaving the complaint and summons with a person apparently
in charge of Defendant's office. Although Defendant was
required to file a responsive pleading by August 6, 2009,
Defendant failed to meet that deadline and disputed service
on August 7, 2009.

On August 7, 2009, this Court issued an Order to Show
Cause ("OSC") why the matter should not be dismissed for
failure to prosecute. On August 8, 2009, Plaintiffs served
Defendant with the FAC for a second time, directly serving
the president of Defendant, William Dugdale ("Dugdale").
A Proof of Service was filed on August 12, 2009, followed
by an amended Proof of Service on September 4, 2009 to
correct an error in the original form. In response to the OSC,
Plaintiffs informed the Court that they re-served Defendant
to avoid "unnecessary motion practice" with regard to the
adequacy of the July 17, 2009 service. The Court found
Plaintiffs' response to be adequate and discharged the OSC on
August 26, 2009. Defendant now challenges Plaintiffs' second
attempt at service.

## II. *Legal Standard*

### A. *Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5)*
Federal Rule of Civil Procedure 12(b)(4) permits a defendant
to challenge the form of summons, and Federal Rule of
Civil Procedure 12(b)(5) addresses the method of service.
*See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed.
Civ. Pro. Before Trial § 9:146 (The Rutter Group 2009). On
a motion challenging the adequacy of service, the plaintiff
bears the burden of establishing that service was valid under
Federal Rule of Civil Procedure 4. *See Brockmeyer v. May,*
383 F.3d 798, 801 (9th Cir.2004). In determining whether
the plaintiff has met its burden under Rule 4, the court is
permitted to "weigh and determine disputed issues of fact."
*See* Schwarzer *et al., supra,* § 9:152.

### B. *Local Rule 7-3*
The Local Rules require the parties to meet and confer prior to
filing certain motions. Local Rule 7-3 states, in relevant part:

> If the proposed motion is one which
> under the F.R.Civ.P. must be filed
> within a specified period of time
> (*e.g.,* a motion to dismiss pursuant
> to F.R.Civ.P. 12(b)) ... then this
> conference shall take place at least five
> (5) days prior to the last day for filing
> the motion; otherwise, the conference
> shall take place at least twenty (20)
> days prior to the filing of the motion.

*2 L.R. 7-3.

"4"

2008 WL 2872648
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Omar VALDOVINOS
v.
COUNTY OF LOS ANGELES et al.

No. CV 06-7580 JVS (SHx). | July 23, 2008.

**Attorneys and Law Firms**

Peter C. Mogbo, Viator Ejikeme Ozoude, Mogbo and
Ozoude, Los Angeles, CA, for Plaintiff.

Erwin M. Benedicto, Amber A. Logan, Nelson & Fulton, Los
Angeles, CA, for Defendants.

**Opinion**

### Proceedings: (In Chambers)
### ORDER RE MOTIONS IN LIMINE

JAMES V. SELNA, Judge.

*1 Nancy Boehme, Deputy Clerk

Plaintiff Omar Valdavinos ("Valdavinos") and defendants
County of Los Angeles *et al.* (collectively "County") seek
various forms of relief by way of *in limine* orders. The Court
now enters its rulings.

#### I. *Valdavinos' Motion.*

Valdavinos seeks an order that he be permitted to offer his
deposition, and that the deposition be redacted to exclude
evidence of prior bad acts, including prior crimes.

By the County's own showing, Valdavinos is unlikely to be
available at trial. Valdavinos is not a United States citizen,
has been deported, and is unable to obtain a visa to enter the
United States. (County Motion *in Limine* No. 1, Ex. G, ¶¶ 3-4,
6.) Assuming Valdavinos is unable to obtain a visa, the Court
will allow use of the deposition. All the requisites of Rule 804
of the Federal Rules of Evidence are met here:

> Testimony given as a witness at
> another hearing of the same or a
> different proceeding, or in a deposition

> taken in compliance with law in
> the course of the same or another
> proceeding, if the party against whom
> the testimony is now offered, or,
> in a civil action or proceeding,
> a predecessor in interest, had an
> opportunity and similar motive to
> develop the testimony by direct, cross,
> or redirect examination.

(Fed.R.Evid.804(b)(1).) The County took two days of
Valdavinos' deposition in his earlier, identical case.

The Court finds that reference to Valdavinos' convictions
before and after the present incident are not relevant to
his Section 1983 claim, and that to the extent there is any
relevance, it is outweighed by the prejudicial effect. The
jury might well be led to conclude that it is permissible to
use excessive force on someone with prior convictions or
the conviction which Valdavinos sustained after the present
incident. This is unfair prejudice. The same is true with regard
to other bad acts.

Valdavinos is directed to prepare a redacted transcript and
to meet and confer with the County to resolve objections to
the redactions. The County shall annotate in the margins its
objections, if any, and the basis therefor. The transcript shall
be lodged with the Court no later than August 4, 2008. The
Court will resolve objections with regard to the redactions at
the final pretrial conference or shortly thereafter.

#### II. *The County's Motions.*

The County proceeds on these motions in flagrant violation
of Local Rule 7-3, the meet-and-confer rule, which provides
in part:

> In all cases not listed as exempt in
> L.R. 16-12, and except in connection
> with discovery motions (which are
> governed by L.R. 37-1 through
> 37-4) and applications for temporary
> restraining orders or preliminary
> injunctions, *counsel contemplating
> the filing of any motion shall first
> contact opposing counsel to discuss
> thoroughly, preferably in person, the
> substance of the contemplated motion
> and any potential resolution.* If the
> proposed motion is one which under

"5"

2011 WL 1302240
Only the Westlaw citation is currently available.
United States District Court,
E.D. **California.**

Kathlyn A. RHODES, Plaintiff,
v.
PLACER COUNTY, et al., Defendants.

No. 2:09–cv–00489 MCE
KJN PS. | March 31, 2011.

**Attorneys and Law Firms**

Kathlyn A. Rhodes, Citrus Heights, CA, pro se.

David K. Huskey, Auburn, CA, Amie Collins Mctavish,
Angelo Kilday and Kilduf, Jerome Martin Varanini, Trimble
Sherinian and Varanini, Natasha Nichole Langenfeld,
Longyear O'Dea and Lavra, Robert Frederick Tyler, Jr.,
Wilke Fleury Hoffelt Gould and Birney, David A Wallis,
Law Office of Goates & McClellan, Dayton Van Vranken
Longyear, Longyear O'Dea and Lavra, LLP, Sacramento, CA,
Patrick Colin Stokes, Thomas Evan Still, Hinshaw Marsh Still
& Hinshaw, Saratoga, CA, for Defendants.

**Opinion**

### *ORDER AND FINDINGS & RECOMMENDATIONS*

KENDALL J. NEWMAN, United States Magistrate Judge.

**\*1** Presently before this court is a motion to dismiss
("MTD") and motion to strike ("MTS"), and in the
alternative, a motion for a more definite statement, filed by
defendants Sonja Marie Jackson, M.D. and David Fakhri,
M.D. (Dkt. No. 73.) Plaintiff Kathlyn Rhodes [1] opposed the
motions with a written opposition and declaration. (Oppo.,
Dkt.Nos.94, 95.) The defendants filed a written reply. (Dkt.
No. 99.) The matter was submitted without oral argument
pursuant to Eastern District Local Rule 230(g). (Dkt. No.
101.)

After plaintiff filed her second amended complaint (the
"SAC"), three sets of defendants filed motions to dismiss and
partially strike the SAC, and those motions are now pending
before the court. [2] The motions filed by other defendants will
be addressed in separate orders. This order addresses only
the motions filed by Drs. Jackson and Fakhri (the "moving
defendants"). (Dkt. No. 73.)

After careful consideration of the pleadings on file, the
record, and the papers filed in support of and in opposition
to these motions, and as discussed below, the undersigned
recommends that the motion to dismiss be granted in part and
denied in part, that the motion to strike be granted in part
and denied in part, and that the motion for a more definite
statement be denied.

### I. *BACKGROUND*

Plaintiff, a licensed attorney [3] appearing in pro se and in
forma pauperis, filed this action on February 20, 2009. (Dkt.
No. 1 .) In general, plaintiff complains of alleged violations
of her rights based upon events surrounding her arrest and
subsequent treatment at a mental health facility. Following
this court's screening of her original complaint under 28
U.S.C. § 1915, plaintiff filed a first amended complaint on
May 20, 2009. (Dkt. No. 4.) Several defendants filed motions
to dismiss that complaint. This court heard oral arguments
on the motion to dismiss the first amended complaint on
March 25, 2010. (Dkt. No. 60.) During that hearing, the
undersigned warned plaintiff that, because she was a licensed
member of the **California** Bar, she would not continue
to receive the leniency typically given to pro se litigants.
The undersigned directed plaintiff to very carefully review
and amend her pleading to correct the various deficiencies
noted in the motions to dismiss, including the need to plead
specific factual allegations against each defendant for each
claim. The undersigned gave plaintiff the example of the
defamation/slander claim, and informed her that to properly
state such a claim, she must allege: the statement(s) made;
by whom; and identify who heard those alleged statements.
The undersigned also emphasized that some of the statute
of limitations arguments made in the motions to dismiss
appeared "well-taken," and cautioned plaintiff that while she
would be permitted the opportunity to amend the apparently
time-barred claims, she would be held to the standards of an
attorney and might therefore face sanctions for continuing to
pursue claims that are, in fact, time-barred. The undersigned
warned plaintiff that, as a member of the bar, she would
be expected to omit claims that were time-barred unless she
could make good faith arguments to the contrary. Finally,
the undersigned instructed plaintiff that with respect to any
claims with a claim presentation requirement (i.e., claims
requiring compliance with the Government Claims Act),

plaintiff would need to plead the dates she presented her claim(s) and attach the notice or claim to her pleading. (*Id.*)

**\*2** After the hearing on March 25, 2010, the court dismissed the first amended complaint and gave plaintiff leave to file her SAC. (Dkt. No. 61.) The court ordered plaintiff to craft her SAC so as to distinguish between each defendant and his or her alleged actions, to state non-conclusory factual bases for claims, and specifically set forth the notice provided to defendants for any claims requiring such notice or claim presentation. (Dkt. Nos. 60, 61 at 2–4.)

On April 27, 2010, plaintiff filed her SAC. (SAC, Dkt. No. 66.) Plaintiff's SAC sets forth fourteen separate claims for relief stemming from an allegedly improper search and arrest and subsequent confinement in a mental facility following her time as a guest at the Comfort Suites hotel in Rocklin, **California**. (Dkt. No. 66.) The SAC asserts claims against twenty-three separate defendants. [4]

The SAC alleges that on November 20, 2007, three Rocklin police officers surrounded plaintiff in a public parking lot, performed a pat down of her body, interrogated her and ordered her to undergo a field sobriety test. (SAC ¶ 10.) Plaintiff alleges that this interaction occurred across the street from the Comfort Suites hotel in Rocklin, where she had rented Room 101. (*Id.*) Although plaintiff avers that she successfully complied with the police officers' requirements, she nonetheless was "forced to ride in the back of Rocklin Police Officer Davis' patrol car from the parking lot to the front door of Comfort Suites," and that she was injured by officer Davis during this process. (*Id.*) Plaintiff alleges that defendants Platina, Collins and others prepared a false police report claiming that defendant Yao told Officer Platina that plaintiff had been "praying to a light" and singing in the hotel lobby and was "acting crazy." (*Id.* ¶ 21.)

Later that same night, plaintiff contends that Officer Platina and another officer returned to the Comfort Suites, told the hotel clerk, defendant Yao, to unlock plaintiff's room, and thereafter searched plaintiff's hotel room and her other belongings without a warrant or exigent circumstances. (*Id.* ¶ 11.) Plaintiff contends that the officers also broke into her car trunk to perform a search. (*Id.* ¶ 13.) Plaintiff then states that "Rocklin Police Officers Platina and/or Jantz, Davis and/ or one or more 'Doe' Defendants 1–20 subsequently beat Plaintiff to the ground and rendered her unconscious, then transported Plaintiff in the back of Platina's patrol car to the Placer County Main Jail in Auburn during the night

of November 20, 2007." (*Id.* ¶ 14.) Plaintiff also alleges that "Platina sexually assaulted Plaintiff in the back seat of his police vehicle." (*Id.*) Plaintiff avers that she was assaulted and injured by a variety of persons including four entities, five individuals, and 80 unnamed Doe defendants with whom she came into contact on November 20 and 21, 2007. (*Id.* ¶ 16 ("Said Defendants refused to allow Plaintiff to make any telephone calls; refused to give Plaintiff food, water or medical treatment for her **personal** injuries inflicted by Defendants; interrogated Plaintiff against her consent; laughed at and ignored Plaintiff's multiple requests to call her boy friend [sic], a lawyer and/or a judge; told Plaintiff she was at Guantanamo Bay and that most of Plaintiff's family was dead; rendered Plaintiff unconscious and searched her body, stripped off Plaintiff's socks and two toe rings without her consent; and injected needles and foreign substances into Plaintiff's body without her consent.").

**\*3** Plaintiff alleges that on the night of November 21, 2007, she was transported via ambulance from the Placer County Main Jail to the Sacramento County Mental Health Treatment Center ("SCMHTC"). (*Id.* ¶ 18.) Plaintiff alleges that upon her arrival at SCMHTC, she was "beat" in the parking lot by three Doe defendants employed by any of five separate entity defendants. (*Id.*)

Plaintiff alleges that she was involuntarily confined for eight days at the SCMHTC. (*Id.*) Plaintiff avers that "[a]s a proximate result of the police brutality, medical malpractice, torture and abuse by Platina, Jantz, Davis, Seipert, Hamilton, Bonner, CFMG, AMR, 'Doe' Defendants 1–80 and/or others, Plaintiff sustained severe **personal** and bodily injuries, including injuries to her head, neck, back, left nipple, both knees, left hip, right shoulder, both wrists, both legs and both feet." (*Id.* ¶ 22.)

Plaintiff alleges that during her time at the SCMHTC, she was "treated" by the moving defendants. (*Id.* ¶¶ 6, 85.) She alleges that moving defendants "were and are physicians licensed to practice psychiatry" in **California**. (*Id.* ¶ 6.) Plaintiff alleges that moving defendants did not properly advise her of the risks of ingesting medications called Seroquel and Lithobid. (*Id.* ¶ 6.) Plaintiff alleges that moving defendants also did not advise her of various rights (i.e., the right to a hearing, the right to a patient's advocate). (*Id.*)

More precisely, plaintiff alleges that moving defendant Jackson "treated" her on or about November 25 through 28, 2007, and "prescribed" a medication, Seroquel, "without

plaintiff's consent ." (*Id.*) Plaintiff alleges that moving defendant Jackson did not disclose Seroquel's "adverse side effects" to plaintiff, in violation of a duty of care. (*Id.*)

Plaintiff also alleges that, during her time at SCMHTC, moving defendant Fakhri "treated Plaintiff on or about November 25, 2007," "changed the dosage of Seroquel and prescribed Lithobid (Lithium)," also without plaintiff's informed consent. (*Id.* ¶¶ 6, 54(b).) Plaintiff alleges that Fakhri, among other defendants, administered injections to plaintiff's body against her will. (*Id.* ¶¶ 30(b), 54(b).)

Plaintiff also alleges that, on July 27, 2008, months after her discharge from SCMHTC, plaintiff "saw Dr. Fakhri" and called his name, but he ignored her. (*Id.* at 6.)

## II. *LEGAL STANDARDS*

Moving defendants' motion is brought pursuant to Rules 12(b)(1), 12(b)(6), 12(e) and 12(f) of the Federal Rules of Civil Procedure.

### A. *Legal Standard For A Motion to Dismiss Under Rule 12(b) (1)*

A motion brought pursuant to Rule 12(b)(1) is a challenge to the court's jurisdiction over the subject matter of the complaint. Federal courts are courts of limited jurisdiction. *Vacek v. UPS,* 447 F.3d 1248, 1250 (9th Cir.2006). The plaintiff has the burden of establishing that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips,* 323 F.3d 1141, 1145 (9th Cir.2003).

### B. *Legal Standard For A Motion to Dismiss Under Rule 12(b) (6)*

*4 A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. *Vega v. JPMorgan Chase Bank, N.A.,* 654 F.Supp.2d 1104, 1109 (E.D.Cal.2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of the claims showing entitlement to relief. Fed.R.Civ.P. 8(a)(2); *see also Paulsen v. CNF, Inc.,* 559 F.3d 1061, 1071 (9th Cir.2009). The complaint must give a defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations and modification omitted).

On a motion to dismiss, the court construes the pleading in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor. [5] *Corrie v. Caterpillar,* 503 F.3d 974, 977 (9th Cir.2007); *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn,* 744 F.2d 694, 696 (9th Cir.1984). In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), however, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Factually unsupported claims framed as legal conclusions, and mere recitations of the legal elements of a claim, do not give rise to a cognizable claim for relief. *Ashcroft v. Iqbal,* ─── U.S. ───, ─── – ───, 129 S.Ct. 1937, 1949–51, 173 L.Ed.2d 868 (2009) (holding that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation").

*Iqbal* and *Twombly* describe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1949–50. [6]

"A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its face.' " *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1034 (9th Cir.2010). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Caviness v. Horizon Cmty. Learning Ctr., Inc.,* 590 F.3d 806, 812 (9th Cir.2010) (quoting *Iqbal,* 129 S.Ct. at 1949).

"Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. *Iqbal,* 129 S.Ct. at 1951–52. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949; *accord Twombly,* 550 U.S. at 556. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## C. *Legal Standard For A Motion To Strike Under Rule 12(f).*

*\*5* Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir.2010) (citing *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc. .,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). "Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Id.* at 971. Further, courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike. *Id.* at 973. "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Id.* Granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues. *Fantasy,* 984 F.2d at 1527–28; *Travelers Cas. and Sur. Co. of America v. Dunmore,* No. CIV. S–07–2493 LKK–DAD, 2010 WL 5200940, at \*3 (E.D.Cal. Dec.15, 2010) (unpublished) (same). Motions to strike are generally disfavored, and in determining whether to grant a motion to strike a district court resolves any doubt as to the sufficiency of a defense in the defendant's favor. *E.g., Mag Instrument, Inc. v. JS Prods., Inc.,* 595 F.Supp.2d 1102, 1106 (C.D.Cal.2008) (internal citations omitted).

## D. *Legal Standard For A Motion For A More Definite Statement; Rule 12(e).*

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. Fed.R.Civ.P. 12(e). A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted. *Federal Sav. & Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1053, 1060 (N.D.Cal.1988); *Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981). The court must deny the motion if the complaint is specific enough to apprise defendant of the substance of the claim being asserted. *Bureerong v. Uyawas,* 922 F.Supp. 1450, 1461 (C.D.Cal.1996). The court should also deny the motion if the detail sought by a motion for more definite statement is obtainable through discovery. *Beery v. Hitachi Home Electronics (America), Inc.,* 157 F.R.D. 477, 480 (C.D.Cal.1993); *accord Harvey v. City of Oakland,* No. C07–01681 MJJ, 2007 WL 3035529, at \*8 (N.D.Cal. Oct.16, 2007) (not reported).

## III. *DISCUSSION*

### A. *Motion to Dismiss*

Moving defendants' MTD seeks relief on numerous grounds (Dkt. No. 73–2), each of which is addressed in turn below.

### 1. *Lack of Subject Matter Jurisdiction*

*\*6* Moving defendants assert Federal Rule of Civil Procedure 12(b)(1) in efforts to dismiss the action on grounds that the court lacks federal subject matter jurisdiction *as to them.* (Dkt. No. 73–2 at 3.) In an argument virtually absent of case law or other support for its position, [7] defendants contend that (1) there is no federal question jurisdiction underlying plaintiff's claim against them and (2) that there is no basis for supplemental jurisdiction. (Dkt. No. 73–2 at 3.) Defendants suggest that their alleged wrongful acts are not part of the same "case or controversy" as the acts alleged to have violated federal law, and thus that no supplemental jurisdiction exists. (Dkt. No. 73–2 at 3.) Defendants argue that supplemental jurisdiction does not exist as to them because there is "no common factual nexus" or temporal relationship between the alleged events triggering federal question jurisdiction and the alleged events ascribed to defendants. (*Id.*) Defendants' arguments are not well-taken.

In general, the court must exercise supplemental jurisdiction over state-law claims that are part of the "same case or controversy." 28 U.S.C. § 1367(a). Only a "loose factual connection" to the underlying federal claim is required for supplemental jurisdiction purposes. *See e.g. CVPartners Inc. v. Boben,* No. C 09–689 SI, 2009 WL 1331108, at *1 (N.D.Cal. May 13, 2009) (not reported); *Campos v. Western Dental Servs. Inc.,* 404 F.Supp.2d 1164, 1168–69 (N.D.Cal.2005) (exercising supplemental jurisdiction where claim and counterclaim were factually and legally distinct but were "offshoots of same basic transaction").) If this condition is satisfied, [8] the federal court maintains jurisdiction over the state claims and all other parties—even parties not facing an allegation that they violated federal law. 28 U.S.C. § 1367(a); *Sea–Land Serv. v. Lozen Int'l,* 285 F.3d 808, 814 (9th Cir.2002) (claims that "rely on identical facts for their resolution" are part of the same "case or controversy" for supplemental jurisdiction purposes); *Executive Software N. Am., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.,* 24 F.3d 1545, 1556 (9th Cir.1994), *overruled on other grounds in Cal. Dept. of Water Res. v. Powerex Corp.,* 533 F.3d 1087 (9th Cir.2008); e.g., *Ortega v. Brock,* 501 F.Supp.2d 1337, 1340–44 (M.D.Ala.2007) (court had original jurisdiction over defendant officer based on 42 U.S.C. § 1983 claim and had supplemental jurisdiction over other defendants based on state-law claims.)

Plaintiff's state law claims are related to the federal claims alleged in this action (SAC ¶¶ 8–9) and thereby form part of the same case or controversy. Here, plaintiff has alleged numerous violations of her rights over seven consecutive days, beginning on November 20, 2007, with the allegedly improper search of her body, hotel room, and vehicle, continuing with her allegedly improper detention and treatment at the Placer County Main Jail, and continuing with her allegedly improper detention and treatment at the SCMHTC allegedly under the care of moving defendants through November 28, 2007. (*Id.* ¶¶ 6, 10, 14.) Thus, the SAC alleges a temporally-connected chain of events. Yet moving defendants seek to sever this chain of events at the time plaintiff was placed in the care of defendants at SCMHTC.

*7 Artificially severing this pleaded chain of alleged events at the time of plaintiff's admittance into SCMHTC makes little sense, given that the events preceding her admittance are relevant to whether such admittance (and subsequent treatment) was proper. Those events give context to plaintiff's alleged treatment at SCMHTC. Given this temporal and logical connection, moving defendants' alleged actions are part of the same "case or controversy" as the acts alleged to have violated federal law—in other words, potential reasons for plaintiff's arrest and detention relate to moving defendants' treatment of plaintiff. Even if the SAC fails to alleged that the moving defendants violated federal law, the other defendants' alleged violations of federal law have not been challenged at this posture. [9] Absent such a showing, this court maintains jurisdiction over the case and all parties to it, including the moving defendants. Hence, at the present time, the invocation of supplemental jurisdiction is appropriate here. 28 U.S.C. § 1367(a). The motion to dismiss for lack of subject matter jurisdiction is denied.

### 2. Failure To State A Claim

The moving defendants request dismissal of seven claims for relief on grounds that they fail to state a claim under Rule 12(b)(6). Moving defendants' arguments with respect to these claims are addressed in turn below.

### a. *Plaintiff's Second Claim for Violation of California Civil and Constitutional Rights (Cal. Civ.Code §§ 43, 45, 46, 51 et seq., 1708.)*

Plaintiff's second claim cites to a litany of statutes but is largely unsupported by specific factual assertions regarding the moving defendants. For the most part, this dart-board approach to pleading fails to meet the notice requirements of Federal Rule 8. To the extent that plaintiff is claiming violation of a specific privacy interest, she was obligated to identify the nature of the privacy interest that was violated, and *by whom,* so that each defendant has sufficient notice of the claims against him or her. *See Twombly,* 550 U.S. at 557. Federal pleading standards require the presentation of factual allegations sufficient to state a plausible claim for relief as to *each* defendant. See *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was **personally** involved in the deprivation of civil rights").

Plaintiff brings a melange of purported statutory claims against the moving defendants. Plaintiff describes these statutory claims as violations of her "rights guaranteed by the **California** Constitution." (SAC ¶ 30.) Plaintiff essentially alleges that each and every named and unnamed defendant participated in a conspiracy to violate plaintiff's civil and constitutional rights. Plaintiff then enumerates some facts underlying her belief that her rights were so violated. Plaintiff

frequently lumps all defendants into one category as if they all performed each action together. (E.g., *id.* ¶ 85 (summarily listing various defendants, *"including but not limited to"* nine individual and entity defendants, then alleging that *"defendants* ... inject[ed] Plaintiff's body with needles and foreign substances *at the Main Jail* in Auburn *and/or* in the AMR ambulance *and* at SCMHTC ...."* and then continuing to list various alleged wrongs without ascribing any of them to specific defendants) (emphasis added).)

*8 As the moving defendants point out, plaintiff provides very few non-conclusory facts supporting a basis for *their* potential liability under plaintiff's second claim. Comparing the second claim for relief as pleaded within plaintiffs' SAC and that same claim as stated within her former pleading demonstrates that, in many instances, rather than using her opportunity to amend the pleading to insert additional *factual* allegations to support her claim, plaintiff instead tacked laundry lists of various defendants onto laundry lists of allegations and bare citations to statutes. (Compare Dkt. No. 4 ¶¶ 26–32 with SAC ¶ 30(a)-(c).)

However, when the conclusory allegations are stripped away, the SAC can be read to state certain factual allegations as against moving defendants: namely, that during plaintiff's time at SCMHTC, the moving defendants prescribed medications without her informed consent and that those medications were injected against plaintiff's wishes. (SAC ¶¶ 6, 54, 54(b), 85.) Although these allegations are almost always directed at moving defendants *and* other defendants, the SAC repeatedly ascribes these alleged events to the moving defendants. Moving defendants have notice of these alleged facts and whatever claims may arise from them. [10]

### i) *California Civil Code § 43*

As to **California Civil Code** § 43 (protection from restraint or bodily harm) [11], moving defendants appear to make a passing argument that **California Civil Code** § 43 is not a statute "that can form the basis for a self-supporting cause of action ....", but they cite no authority supporting that argument. (MTD at 4–5.) Absent such authority, the undersigned cannot conclude that **California Civil Code** § 43 does not create a private right of action warranting the claim's dismissal at the pleading stage. Moreover, district courts within this circuit have not described violations of **California Civil Code** § 43 as unable to form the basis of a self-supporting cause of action. *E.g., Davis v. Kissinger,* 2009 WL 2043899, No. CIV S–04–0878 GEB DAD P, at *8 (E.D.Cal. July 14, 2009) (not reported)

(holding that **California Civil Code** § 43 "codifies causes of action for assault, battery, and invasion of privacy" and denying summary judgment on state law claims, including those under that section); *Atilano v. County of Butte,* No. CIV. S–07–0384 FCD KJM, 2008 WL 4078809, at *6–7 (E.D.Cal. Aug.28, 2008) (not reported) (granting summary judgment on claim for violation of **California Civil Code** § 43 because undisputed facts did not show physical harm, *not* describing the statute as unable to form the basis of a cause of action).

With respect to the factual sufficiency of the SAC, plaintiff has pleaded factual allegations supporting a claimed violation of **California Civil Code** § 43—but only as to moving defendant Fakhri. As described above, when conclusory allegations are stripped away, the SAC's allegations are that moving defendants "prescribed" medications to her without obtaining her informed consent (*e.g.,* SAC ¶ 6), *including* an allegation that moving defendant Fakhri himself administered injections against her will. (*Id.;* ¶¶ 30(b), 54(b).) Plaintiff also circuitously alleges that she suffered emotional distress as a result. (*E.g., id.* ¶¶ 6, 24, 59–61, 85, Prayer at p. 36.) The SAC makes substantially the same allegations against moving defendant Jackson, but falls short of alleging that Jackson herself actually performed any injections, restrained her, or threatened her. (*Compare id.* ¶ 6, 85, 30(b) *with* ¶ 64(b) (listing only Fakhri as among defendants who allegedly administered injections to plaintiff).)

*9 Administering an injection against someone's wishes logically involves a physical touching and could potentially constitute the tort of battery or be determined to have caused "bodily harm" under **California Civil Code** § 43. To establish a claim of battery under **California** law, a plaintiff must prove that: (1) the defendant touched the plaintiff with the intent to harm or offend him, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed or offended by defendant's conduct. *Boyd v. City of Oakland,* 458 F.Supp.2d 1015, 1051–52 (N.D.Cal.2006).

Therefore, while the SAC alleges a bare minimum of facts as against moving defendants, these facts are sufficient to support a claim that moving defendant Fakhri violated **California Civil Code** § 43 such that the claim survives the pleading stage. As to moving defendant Jackson, on the other hand, the allegations within the SAC are not sufficient to support a claim that she violated **California Civil Code** § 43.

Accordingly, as to alleged violations of **California Civil Code** § 43, moving defendants' motion is granted with respect

to Jackson and denied with respect to Fakhri. As plaintiff has had multiple opportunities to amend her pleading in order to clearly link specific allegations with specific defendants, the undersigned recommends that the claim for violation of **California Civil Code § 43** be dismissed with prejudice as against Jackson.

### ii) *California Civil Code §§ 45 and 46*

As to **California Civil Code** §§ 45 and 46 (libel, slander), defendants again cite no authority and argue in passing that neither statute can "form the basis of a self-supporting cause of action...." (MTD at 4–5). As stated above in reference to **California Civil Code** § 43, absent such authority, the undersigned cannot conclude that these sections do not support a private right of action warranting dismissal at the pleading stage.

Defendants also argue that plaintiff has not pleaded factual allegations pertaining to the moving defendants that would support a claim for violation of **California Civil Code** §§ 45–46. (MTD at 5.) The argument is well-taken. Plaintiff alleges that moving defendants "prescribed" medications to her without obtaining her informed consent (*e.g.,* SAC ¶ 6) and that Fakhri injected her against her wishes, not facts suggesting that moving defendants *themselves* ever published any statements about her—defamatory or otherwise. (*Id.;* ¶ 30(b).)

Accordingly, with respect to plaintiff's claims for violations of **California Civil Code** §§ 45–46, moving defendants' motion to dismiss is granted. As plaintiff has had multiple opportunities to amend her pleading and has not suggested any ability to amend her pleading to correct these defects, the undersigned recommends that the claim for violation of **California Civil Code** §§ 45–46 be dismissed with prejudice as against the moving defendants.

### iii) *California Civil Code §§ 51 and 51.7*

*\*10* As to the sections of the Unruh Act upon which plaintiff purports to base her second claim (**Cal.** Civ.Code §§ 51 and 51.7), plaintiff has not alleged that moving defendants had knowledge that plaintiff had any alleged protected "characteristic listed or defined in subdivision (b) or (e) of Section 51." **Cal.** Civ.Code § 51.7. Therefore, while plaintiff may plead facts that might possibly support these claims as against *other* defendants (such as her allegation that she was arrested in part due to her religious practices within a hotel) (SAC ¶ 21), she has not alleged facts indicating that

*moving defendants* were involved in that arrest or that their alleged conduct toward her was "on account of" such alleged protected characteristic(s). *Id.*

Accordingly, with respect to plaintiff's claims for violations of **California Civil Code** §§ 51 and 51.7, moving defendants' motion to dismiss is granted. As plaintiff has had multiple opportunities to amend her pleading in order to clearly link specific allegations with specific defendants and has not suggested any ability to amend her pleading to remedy these defects, the undersigned recommends that the claim for violation of **California Civil Code** §§ 51 and 51.7 be dismissed with prejudice as against the moving defendants.

### iv) *California Civil Code §§ 54, 54. 1, and 54.3*

Plaintiff's claims under **California Civil Code** §§ 54 (equal rights to public facilities), 54.1 (right to full and equal access to public facilities), and 54.3 (denial or interference with admittance to or enjoyment of public facilities) (SAC ¶ 30(c) are unsupported by factual allegations with respect to the moving defendants. Moreover, these statutes protect the right to equal access to public accommodations by blind and physically disabled persons. Cal. Civ.Code §§ 54, 54.1, 54.3. Plaintiff has alleged neither blindness nor physical disability within her SAC. Likewise, she has not alleged that moving defendants played any role in denying her access to any public facilities.

Accordingly, with respect to plaintiff's claims for violations of **California Civil Code** §§ 54, 54. 1, and 54.3, moving defendants' motion to dismiss is granted. As plaintiff has had multiple opportunities to amend her pleading in order to clearly link specific allegations with specific defendants, and because plaintiff has not suggested any ability to amend her pleading to correct these defects, the undersigned recommends that the claim for violation of **California Civil Code** §§ 54, 54. 1, and 54.3 be dismissed with prejudice as against the moving defendants.

### v) *California Civil Code § 52.1*

Plaintiff's claim under **California Civil Code** § 52.1 (interference with exercise of civil rights) (SAC ¶ 30(c) is largely unsupported by factual allegations with respect to the moving defendants. **California Civil Code** § 52.1(a)–(b) makes actionable any interference "with the exercise or enjoyment ... of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state" by "threats, intimidation, or coercion."

*11 As described above, plaintiff alleges that moving defendants "prescribed" medications to her without obtaining her informed consent, *and* alleges that moving defendant Fakhri (but not Jackson) administered injections against her will. (*Id.;* ¶¶ 6, 30(b), 54(b).) While the SAC alleges a bare minimum of facts as against moving defendants, moving defendants have not cited authorities indicating that, for instance, administering unwanted injections are insufficient to support a claim that moving defendant Fakhri violated California Civil Code § 52.1. Because moving defendants cite no authority to the contrary, the undersigned cannot determine that administering injections without a patient's consent does not amount to "threats, intimidation, or coercion" interfering with plaintiff's rights as a matter of law, such that the claim should be dismissed at the pleading stage.

Accordingly, as to moving defendant Fakhri, the allegations within the SAC are sufficient to support a claim that he violated California Civil Code § 52.1 by injecting plaintiff against her wishes. As to moving defendant Jackson, on the other hand, the allegations within the SAC (i.e., that Jackson prescribed medication without informing plaintiff of adverse side effects (SAC ¶ 6)) are not sufficient to support a claim that she violated California Civil Code § 52.1. Therefore, with respect to the claim for violation of California Civil Code § 52. 1, the motion to dismiss is denied as to moving defendant Fakhri and granted as to moving defendant Jackson. As plaintiff has had multiple opportunities to amend her pleading in order to clearly link specific allegations with specific defendants, and as plaintiff has not suggested any ability to amend her pleading to correct these defects, the undersigned recommends that the claim be dismissed with prejudice as to moving defendant Jackson.

### vi) *California Civil Code § 1708*

Plaintiff's claim under California Civil Code § 1708 [12] (duty to avoid injuring persons or property) (SAC ¶ 30(d)), does not provide for a private right of action. *Von Grabe v. Sprint PCS,* 312 F.Supp.2d 1285 (S.D.Cal.2003) (holding that Section 1708 does not create a private right of action); *accord Carr v. Allied Waste Systems of Alameda County,* No. C 10–0715 PJH, 2010 WL 4916433, at *14 (N.D.Cal. Nov.23, 2010) (not reported).) Accordingly, the motion to dismiss is granted with respect to this claim. As amendment would be futile, the undersigned recommends that this claim be dismissed with prejudice as against moving defendants.

### b. *Medical Battery Claim*

#### i) Statute of Limitations

Moving defendants argue that the statute of limitations bars any claim for medical battery. (MTD at 7–8.) They cite to California Code of Civil Procedure § 340.5 ("Section 340.5"), which provides for a one year statute of limitations in actions against medical providers "based upon such person's alleged professional negligence...." Cal.Code Civ. Proc. § 340.5. Yet a "medical battery" claim does not sound in negligence, but in an intentional act. Aware of this distinction, moving defendants cite the Central Pathology case and suggest it can be interpreted to bring even intentional tort claims against medical providers within the one-year statute of limitations stated in Section 340.5. (MTD at 7–8 (citing *Central Pathology Serv. Med. Clinic, Inc. v. Superior Court,* 3 Cal.4th 181, 192, 10 Cal.Rptr.2d 208, 832 P.2d 924 (1992).) This argument is not well-taken.

*12 The court in Central Pathology did not examine Section 340.5 or deal with statutes of limitation. Central Pathology, 3 Cal.4th at 192, 10 Cal.Rptr.2d 208, 832 P.2d 924. Instead, the court interpreted *another* statutory section (Cal. Civ.Code § 425.13 (punitive damages)). *Id.* The court construed the phrase "arising out of professional negligence" in *that* statutory section to include intentional torts, so long as the conduct giving rise to such damages is "directly related to the manner in which defendants provided professional services." Central Pathology, 3 Cal.4th at 192, 10 Cal.Rptr.2d 208, 832 P.2d 924. The court's conclusion was shaped by the specific statute in question—Civil Code § 425.13—and the need to read the section broadly in order to effectuate its purpose of limiting *punitive damages* suits against medical providers. *Id.* at 190–93, 10 Cal.Rptr.2d 208, 832 P.2d 924 (recognizing the "Legislature's intent to protect health care providers from unsubstantiated punitive damage claims" and holding that "[t]he clear intent of the Legislature is that any claim for punitive damages in an action against a health care provider be subject to the statute if the injury that is the basis for the claim was caused by conduct that was directly related to the rendition of professional services.") Therefore, the court's decision in *Central Pathology* to lump together claims sounding in negligence together with claims sounding in tort is limited to the circumstances of that case.

Further, moving defendants have not cited a single case invoking Central Pathology's rationale for *statute of limitations purposes* in general, let alone using that rationale to treat tort claims akin to negligence claims under Section

340.5 in particular. Absent more specific direction from the
case law, the undersigned cannot find that *Central Pathology*
effectively expands Section 340.5 to shorten the statutes of
limitation for intentional tort claims alleged against medical
providers. Accordingly, at this posture the undersigned
cannot find that plaintiff's medical battery claim—and other
intentional tort claims under state law—are time-barred under
Section 340.5 as a matter of law.

### ii) *Failure to Plead Facts Supporting Claim*

A typical "medical battery" case is where "a patient has
consented to a particular treatment, but the doctor performs a
treatment that goes beyond the consent." *Thomas v. Hickman,*
No. CV F 06–0215 AWI SMS, 2009 WL 1273190, at *18–
19 (E.D.Cal. May 5, 2009) (not reported). The California
Supreme Court has held that a battery and lack of informed
consent are two separate causes of action. *Id.* "A claim based
on lack of informed consent—which sounds in negligence
—arises when the doctor performs a procedure without
first adequately disclosing the risks and alternatives. In
contrast, a battery is an intentional tort that occurs when a
doctor performs a procedure without obtaining any consent."
*Thomas,* 2009 WL 1273190, at *18–19 (citing *Saxena v.
Goffney,* 159 Cal.App.4th 316, 324, 71 Cal.Rptr.3d 469
(2008).)

*13 Plaintiff's "medical battery" claim is premised on
factual allegations that medications Seroquel and Lithobid
were prescribed to her without consent, and that she was
injected with "needles" containing such medication and
"foreign substances" without her consent. (SAC ¶¶ 54, 85.)
Plaintiff alleges that she suffered emotional distress as a result
of receiving medication in this fashion. (FAC ¶¶ 6, 24, 85,
Prayer at p. 36, 71 Cal.Rptr.3d 469.)

Plaintiff also alleges that moving defendants' failed to
advise her of a right to a hearing to determine whether
she was "gravely disabled," and failed to provide records
after plaintiff's discharge. (SAC ¶¶ 6, 54(b).) However,
plaintiff does not allege facts suggesting that either of moving
defendants *themselves* had the duty to hold hearings or
provide records, and no allegation that plaintiff asked either
defendant to do either. Regardless, the "hearing" and "failure
to provide records" allegations do not support the medical
battery claim.

Nevertheless, plaintiff's "medical battery" claim meets
minimum pleading standards given the factual allegations that
moving defendants prescribed and administered medications

without "any" informed consent from plaintiff. *See Thomas,*
2009 WL 1273190, at *18–19. Therefore, while plaintiff does
not allege that she suffered directly from side effects of the
administered drugs, a point advanced by moving defendants,
plaintiff does allege that she suffered some form of harm
resulting from defendants' alleged conduct.

### iii) *Immunity under Section 5278*

Although plaintiff has pleaded facts sufficient to support
a "medical battery" claim against moving defendants,
defendants argue that they are fully immunized against
the claim by virtue of California Welfare and Institutions
Code § 5278 ("Section 5278"). (MTD at 10–11.) Plaintiff
alleges that most of her contact with moving defendants
occurred during a 72–hour hold "pursuant to Welfare and
Institutions Code Section 5150." (E.g., SAC ¶ 6.) According
to defendants, because moving defendants' alleged tortious
contact (i.e., prescribing medications and administering them
without consent) occurred during that 72–hour hold (MTD at
2, 5), Section 5278 necessarily applies to render defendants
immune to all claims arising from that contact.

Defendants' argument is premature at this posture. The
undersigned cannot determine, as a matter of law, that
plaintiff's detention under Welfare and Institutions Code §
5150 was prompted by "probable cause" and thus done
"in accordance with the law" as required for immunity to
apply pursuant to Section 5278. Cal. Welf. & Inst.Code §§
5150, 5278; *Bias v. Moynihan,* 508 F.3d 1212, 1221–23
(9th Cir.2007). The threshold question of whether "probable
cause" existed for plaintiff's detention is a question of fact
that cannot be resolved *at the pleading stage.* Defendants did
not cite any precedent involving a claim similar to plaintiff's
that was dismissed at the pleading stage on grounds that it
arose from conduct that was immunized pursuant to Section
5278. Instead, defendants' cited cases involved dismissal of
claims *at the summary judgment stage,* after a determination
that "undisputed facts" demonstrated "probable cause" for
detention and thus that Section 5278 immunity applied. *E.g.,
Bias,* 508 F.3d at 1221–23 (granting summary judgment on
immunity grounds); *Gonzalez v. Paradise Valley Hospital
Assn.,* 111 Cal.App.4th 735, 742, 3 Cal.Rptr.3d 903 (2003)
(overturning grant of summary judgment on immunity
grounds); *Heater v. Southwood Psychiatric Center,* 42
Cal.App.4th 1068, 1083, 49 Cal.Rptr.2d 880 (1996) (after an
evidentiary hearing involving three days of testimony, the
court found immunity and entered judgment for defendants).
Accordingly, the undersigned cannot find that immunity
under Section 5278 acts as an absolute bar to plaintiff's

medical battery (and other state law tort claims) against moving defendants at this time. Therefore, the motion to dismiss is denied with respect to plaintiff's medical battery claim.

### c. *Intentional Infliction of Emotional Distress ("IIED") Claim*

#### i) *Failure To Plead Facts Supporting Claim*

**\*14** Defendants argue that the SAC "factually fails to state a claim" for IIED upon which relief can be granted. To state a claim for IIED under California law, a plaintiff must satisfactorily allege the following elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair,* 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009) (citations and quotation marks omitted). The California Supreme Court has explained that "outrageous" conduct is that which is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and that "the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result." *Id.* (citations and quotation marks omitted).

As described above, plaintiff alleges that moving defendants "prescribed" medications "without Plaintiff's consent" (SAC ¶ 6) and administered them without her consent (*id.*), including via injection with needles. (SAC ¶¶ 6, 85.) Albeit circuitously, plaintiff alleges that she suffered emotional distress as a result of receiving medication in this fashion. (SAC ¶¶ 6, 24, 59–61, 85, Prayer at p. 36, 95 Cal.Rptr.3d 636, 209 P.3d 963.) As described above, plaintiff does not allege that both moving defendants *themselves* injected her against her wishes (although she alleges this as to moving defendant Fakhri, however, she suggests that both moving defendants "prescribed" such injections. (SAC ¶ 30(b).)

Moving defendants focus on the "outrageous conduct" element of an IIED claim. (MTD at 12.) They argue that "the factual basis for plaintiff's claim lies in an alleged lack of advice and information," and that such conduct is not so "outrageous" to as subject them to liability for IIED. (MTD at 12 (citing *Berkley v. Dowds,* 152 Cal.App.4th 518, 533, 61 Cal.Rptr.3d 304 (2007).) Regardless of the plausibility of the events as alleged, the court cannot find, at this time, that

the SAC fails to state facts "outrageous" enough to support an IIED claim against moving defendants as a matter of law. If, as alleged, the moving defendants ordered injections into plaintiff's body without proper consent, the court cannot find that this claim is subject to dismissal at the pleading stage on grounds that the alleged conduct is not sufficiently severe or outrageous. "[W]hether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds,* 152 Cal.App.4th 518, 533–34, 61 Cal.Rptr.3d 304 (2007).

#### ii) *Statute of Limitations*

Defendants argue that the IIED claim in this case is "directly based" on health care services and should therefore be construed as "subject to the one year statute of limitation as set forth by Code of Civil Procedure section 340.5." (MTD at 7, 9.) For the reasons described above in the discussion of plaintiff's medical battery claim, however, the undersigned cannot find that plaintiff's IIED claim is time-barred under Section 340.5 as a matter of law. Accordingly, defendants' motion to dismiss is denied with respect to the IIED claim.

### d. *Medical Malpractice (Professional Negligence) Claim*

#### i) *Failure To Plead Facts Supporting Claim*

**\*15** The elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Thomas,* 2007 WL 1273190, at \*16–17 (citing *Johnson v. Superior Court,* 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); *Hanson v. Grode,* 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999).)

When stripped of conclusory and vague statements, plaintiff's medical malpractice claim boils down to an allegation that the moving defendants, alleged medical professionals with a duty of care, failed to properly advise her about side effects for certain medications, administered them without her consent, and that plaintiff suffered emotional distress as a result. (SAC ¶ 6, 24, 85, Prayer at p. 36, 90 Cal.Rptr.2d 396.) Specifically, plaintiff alleges that moving defendants "prescribed" medications Seroquel and Lithobid "without

Plaintiff's consent" (*id.* ¶ 6, 90 Cal.Rptr.2d 396), and administered them without her consent (*id.*), including (as to Fakhri) via injection of plaintiff's body with needles. (*Id.* ¶¶ 6, 30(b), 54(b), 85, 90 Cal.Rptr.2d 396.) Albeit circuitously, plaintiff alleges that she suffered emotional distress as a result of receiving medication in this fashion. (*Id.* ¶¶ 6, 24, 85, 59–61, 90 Cal.Rptr.2d 396, Prayer at p. 36, 90 Cal.Rptr.2d 396.) Therefore, while she does not allege that she suffered directly from side effects of the administered drugs, plaintiff alleges that she suffered some form of harm resulting from defendants' alleged conduct. Plaintiff's medical malpractice claim meets minimal pleading requirements and cannot be dismissed at this stage.

Further, as described above, the undersigned cannot conclude at this posture that Section 5278 immunizes defendants' alleged medical malpractice or professional negligence, because a factual determination is required regarding whether plaintiff's detention was prompted by "probable cause" and therefore done "in accordance with the law." *E.g.,* Cal. Welf. & Inst.Code §§ 5150, 5278; *Bias,* 508 F.3d at 1221–23. Further, Section 5278 only provides immunity for the exercise of authority to detain and evaluate, not from actions for negligence or other acts or omissions in the evaluation or treatment during 72–hour holds. *Gonzalez v. Paradise Valley Hosp.,* 111 Cal.App.4th 735, 3 Cal.Rptr.3d 903 (2003).

### ii) *Statute of Limitations*

Plaintiff's medical malpractice claim alleges professional negligence by health care providers—the moving defendants —and is therefore subject to the statute of limitations set forth in Section 340.5. Section 340.5 requires plaintiff to commence her action "three years after the date of the injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, *whichever comes first."* Cal. Civ.Code § 340.5 (emphasis added). Plaintiff alleges that moving defendants treated her "on or about" November 25 through November 28, 2007. (SAC ¶ 6.) On the pleaded facts, then, plaintiff discovered her alleged injuries at the time they occurred or soon thereafter. (*Id.* ¶¶ 6, 59–61, 85, 3 Cal.Rptr.3d 903.) Plaintiff does not allege any delay in discovering the physical and emotional distress injuries she alleges resulted from moving defendants' alleged prescription and administration of Seroquel and Lithobid without consent. Accordingly, without any extensions or tolling, the statute of limitations appears to have run on or about November 25 through November 28, 2008. (*Id.* ¶ 6, 3 Cal.Rptr.3d 903; see Cal. Civ.Code § 340 .5.)

Plaintiff filed her complaint on February 20, 2009, well after that date. (Dkt. No. 1.)

**\*16** However, plaintiff argues that Section 340.5's limitation period was extended for a 90–day period because she served moving defendants with letters giving Notice of Intention to File Suit ("NIFs") (Oppo. at 11), pursuant to California Code of Civil Procedure § 364. "From the language of section 364(d) it is apparent that the Legislature intended (1) that for a plaintiff who serves notice within the last 90 days of the original limitations period that period is 'extended' for a variable period beyond the initial expiration date, not 'tolled' for an automatic 90 days, and (2) that the extension be calculated from the date of 'service of the notice,' by its terms a date that varies with each case." *Estrella v. Brandt,* 682 F.2d 814, 818 (Cal.1982). Plaintiff has indicated that she served the NIFs "on August 27, 2008." (Oppo. at 11.)

Defendants appear to admit NIFs were served, although they state that such service occurred "on August 26, 2008." (MTD at 9–10.) They conclude that such service did not occur *"within* the last 90 days of the expiration of" the one-year statute of limitations, and therefore that no 90–day extension occurred. (*E.g.,* MTD at 9–10, Reply at 3; Cal.Code Civ. Proc. § 364(d) (emphasis added).) [13] Defendants calculate the "last 90 days before the expiration of" the statute of limitations as August 30, 2008, such that service of any NIFs *prior to* that date would not trigger the 90–day extension provided in Section 364(d). (MTD at 9–10.) Defendants argue that the SAC alleges that a NIF was served upon Fakhri "91 days before the limitations period ran," and that a NIF was served upon Jackson "94 days before the limitations period" ran. (MTD at 10, Reply at 3.)

However, the actual dates of service of the NIFs are facts that do not appear on the face of the SAC or its attachments, and therefore it is not clear that the NIFs were served upon the moving defendants "within" the "last 90 days" of the statute of limitations. See Cal.Code Civ. Proc. § 364(d). While plaintiff alleges that she served NIFs on "August 27, 2008," (Oppo. at 11) and defendants have stated that such service occurred on "August 26, 2008" (MTD at 9–10), the fact of such service does not clearly appear on the face of the SAC or exhibits thereto. Although the FAC appends NIF-related documents as exhibits, it attaches only a NIF addressed to defendant Fakhri (Exh. 5 to SAC) and dated August 25, 2008 with no proof of service for that letter, and two "certified mail receipts" confirming the mailing of some document(s) (not clearly a NIF) upon defendant Jackson on

August 27, 2008.[14] (Exh. 5 to SAC.) In a nutshell, there is no NIF addressed to Jackson and no proof that Fakhri was ever served with the NIF addressed to him. (*See id.*) Therefore, while the defendants do not dispute that NIFs were served upon them, it is not clear from the face of the pleading (or exhibits appended thereto) *when* such service occurred, let alone whether it definitely occurred "within" the last 90 days of the expiration of the statute of limitations. (*See* Cal.Code Civ. Proc. § 364(d).)

**\*17** On a motion to dismiss, all the court has before it is the pleading itself, exhibits attached thereto, and judicially-noticeable documents. *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899 (9th Cir.2007). Although a claim may be dismissed pursuant to Rule 12(b)(6) on the ground that the claim is barred by the applicable statute of limitations, such a dismissal may be had "only when 'the running of the statute is apparent on the face of the complaint.' " *Von Saher v. Norton Museum of Art at Pasadena,* 592 F.3d 954, 969 (9th Cir.2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir.2006)). " '[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.' " *Id.* (modification in original) (quoting *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir.1995)); see also *Cervantes v. City of San Diego,* 5 F.3d 1273, 1275 (9th Cir.1993) (stating that when a motion to dismiss is based on the running of the statute of limitations, the motion "can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled") (citation and quotation marks omitted); *accord E.E.O.C. v. ABM Industries Inc.,* 249 F.R.D. 588, 591 (E.D.Cal.2008) (explaining that pleadings "can be dismissed for failure to state a valid claim when a violation of the limitations period is evident from the face of the complaint" and concluding that, "[b]ased on the pleadings filed to date, it is impossible for the Court to ascertain with any degree of certainty whether" claims were time-barred.)

Defendants have not requested judicial notice[15] of any NIF-related documents, leaving factual gaps regarding whether NIFs were actually *served* upon moving defendants, let alone whether such service occurred "within" the crucial "last 90 days." See *id.* Plaintiff's representation in her opposition that she effectuated such service on "August 27, 2008" (Oppo. at 11) does not remedy this issue, given that the motion before the court is limited to the contents of the SAC and judicially-noticeable facts. E.g., Outdoor Media Group, 506 F.3d at

899. Neither plaintiff nor defendants have properly filled the factual gaps that would permit resolution of the issue at the pleading stage.[16]

Further, given that the alleged service of the NIFs may have occurred on the eve of the relevant 90–day deadline (i.e., one day before the cutoff in defendant Fakhri's case, and four days before the cutoff in defendant Jackson's case) (MTD at 10, Reply at 3), a confirmation of the actual date(s) of service is necessary prior to dismissal of any of plaintiff's claims, with prejudice, on statute of limitations grounds at the pleading stage. Therefore, the undersigned cannot resolve the issue of whether service of the NIFs actually occurred "within" 90 days of the expiration of the statute of limitations at this posture. Defendants' motion to dismiss is denied with respect to plaintiff's medical malpractice (professional negligence) claims.

**e. *Negligence Per Se* Claim**

**\*18** Just as the undersigned cannot conclude at this posture that plaintiff's medical malpractice (professional negligence) claim is time-barred at this posture, for the same reasons, the undersigned cannot conclude that plaintiff's "negligence per se (violation of statutes)" claim is time-barred. (MTD at 9.) The date(s) defendants were served with the NIF(s) is not clear from the face of the SAC, so the application of the 90–day extension (Cal.Code Civ. Proc. § 364(d)) cannot be determined at this stage.

Putting aside their statute of limitations argument, moving defendants argue that plaintiff has not alleged facts specific to *them* that would give rise to liability for "negligence per se." (MTD at 14.) When plaintiff amended her "negligence per se" claim she did not include any allegations against the moving defendants, and thus moving defendants are implicated only through the paragraph incorporating all foregoing allegations "by reference ." (*Id.;* SAC ¶ 90.)

In **California**, negligence per se is "a presumption of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." *People of California v. Kinder Morgan Energy Partners, L.P.,* 569 F.Supp.2d 1073, 1087 (S.D.Cal.2008) (citing cases). Negligence per se "is merely an evidentiary doctrine and not an independent cause of action." *Id.* (clarifying that negligence per se is simply a codified evidentiary doctrine

that does not establish tort liability). However, the facts giving rise to a negligence claim—not a violation of the statute or regulation itself—are what entitle a plaintiff to recover civil damages for negligence per se. *Spencer v. DHI Mortg. Co., Ltd.,* 642 F.Supp.2d 115, 1161–62 (E.D.Cal.2009) ("The negligence per se doctrine assists as evidence to prove negligence.... In such circumstances the plaintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." (citations and internal quotation marks omitted).)

As described above, plaintiff has pleaded a minimal basis for a medical malpractice claim (professional negligence) claim against moving defendants. But while the allegations supporting that underlying negligence claim might support civil damages for "negligence per se," "negligence per se" is not an independent cause of action. *See Spencer,* 642 F.Supp.2d at 1161–62.

Moreover, even if "negligence per se" were an independent cause of action, plaintiff's allegations, that she "was and is one of the class of persons for whose protection the statutes or regulations were adopted" (SAC ¶ 92), and that her alleged injuries at the hands of moving defendants "resulted from occurrences that said statutes and/or regulations were designed to prevent" (*id.* ¶ 93), are vague and conclusory and do not support a negligence per se "claim." As described above, while plaintiff alleges she was arrested on account of her religious practices, she has not alleged that *moving defendants* played a role in her arrest, that their conduct toward her had anything to do with those religious practices, or that they were even aware of her religious beliefs.

**\*19** Accordingly, the motion to dismiss is granted with respect to plaintiff's negligence per se claim, and the undersigned recommends that this "claim" be dismissed without leave to amend as against moving defendants.

#### f. *False Imprisonment Claim*

Moving defendants argue that the false imprisonment claim in this case is "directly based" on health care services and should therefore be construed as "subject to the one year statute of limitation as set forth by Code of Civil Procedure section 340.5." (MTD at 10.) For the reasons described above in the discussion of plaintiff's medical battery claim, however, the undersigned cannot find that plaintiff's false imprisonment claim is time-barred under Section 340.5 as a matter of law.

However, defendants also argue in the alternative that plaintiff's false imprisonment claim is time-barred even if it is treated as a "straight" false imprisonment claim and therefore subject to the one-year limitations period set forth in Code of Civil Procedure § 340(c) ("Section 340(c)"). (MTD at 10.) As to the application of Section 340(c), defendants' argument is well-taken.

The limitations period on a claim of false imprisonment begins to run when the alleged false imprisonment ends. *Wallace v. Kato,* 549 U.S. 384, 387–89, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). As described above, moving defendants' alleged tortious contact (i.e., prescribing medications and administering them without consent) occurred "on or about" November 25 through November 28, 2007. (SAC ¶ 6.) On the pleaded facts, plaintiff discovered her alleged injuries (i.e., unwanted injections, medications, and emotional distress therefrom) at the time they occurred or soon thereafter. (*Id.* ¶¶ 6, 24, 59–61, 85.) Plaintiff does not allege any delay in discovering the physical and emotional distress injuries she alleges resulted from unwanted medication and injections.

Accordingly, on the face of the SAC, the one-year statute of limitations appears to have run on or about November 25 through November 28, 2008. (*Id.* ¶¶ 6, 85.) Plaintiff filed her complaint on February 20, 2009, well after that period. (Dkt. No. 1 .) From the face of the SAC, then, plaintiff's false imprisonment claim is time-barred as against moving defendants. Therefore, the motion to dismiss is granted with respect to the false imprisonment claim, and the undersigned recommends that the claim be dismissed with prejudice as to the moving defendants. [17]

#### g. *Conversion Claim*

A conversion occurs where the defendant wrongfully exercises dominion over the property of another. *Bank of New York v. Fremont General Corp.,* 523 F.3d 902, 914 (9th Cir.2008). To establish conversion, a plaintiff must show: (1) her ownership of or right to possess the property at the time of the conversion; (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act; and (3) damages. *Id.* (citing cases).

While plaintiff purports to advance her conversion claim against "all defendants," (SAC ¶¶ 80–81), the SAC is devoid of factual allegations supporting a conversion claim as against moving defendants. While the SAC alleges an ownership in

certain personal property including a flute, purse, luggage, etc. (*id.* ¶ 82), plaintiff does not allege any further details about what happened to other items of personal property except for conclusions that the items were "seized, damaged, destroyed, lost, converted, and/or stole [n]." (*Id.* at 82). While the SAC alleges the facts that officers arresting plaintiff had access to and seized various items of property, plaintiff does not allege that moving defendants were ever remotely near her property. Indeed, nowhere in the SAC does plaintiff allege facts suggesting that moving defendants *themselves* ever came into contact with or had access to plaintiff's personal property, let alone facts indicating that moving defendants unlawfully converted or seized that property.

*20  On these allegations, it *possible* that moving defendants —or any one of the over 100 defendants—confiscated plaintiff's personal property, but there are no factual allegations nudging the claim into the realm of plausibility as to moving defendants. *See Iqbal,* 129 S.Ct. at 1952 (where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," the complaint may be dismissed.) At most, these allegations suggest only "a sheer possibility that" moving defendants seized plaintiff's personal property. *See id.* at 1949; *see Twombly,* 550 U.S. at 544. Accordingly, the motion to dismiss is granted with respect to the conversion claim, and the undersigned recommends that this claim be dismissed without leave to amend.

## B. *Motion to Strike*

### 1. *Allegations that Dr. Fakhri "Abandoned" Plaintiff*

Moving defendants seek to strike the SAC's allegations that Dr. Fakhri abandoned plaintiff by failing to acknowledge her when plaintiff returned to SCMHTC to obtain copies of medical records on July 27, 2008. (SAC ¶ 6 (specifically, page 4, lines 17–20).) Moving defendants argue that the statement that Fakhri "abandoned" plaintiff lacks a factual basis and is impertinent and immaterial under Federal Rule of Civil Procedure 12(f). (MTS at 15.) "Immaterial" statements are those with "no essential or important relationship to the claim for relief or the defenses" pleaded. *Whittlestone,* 681 F.3d at 974. "Impertinent" statements are statements that "do not pertain, and are not necessary, to the issues in question." *Id.* Under these definitions, moving defendants' argument is well-taken.

The SAC fails to allege any factual basis for a continuing doctor-patient relationship following plaintiff's discharge

from SCMHTC in November 2007. Further, an allegation that Fakhri "abandoned" plaintiff is conclusory and does not lend factual support to any of the tort claims plaintiff alleges against Fakhri. In other words, whether Fakhri "abandoned" or "ignored" plaintiff months after his alleged injections and alleged prescription of medications without informed consent does not bear on the alleged medical battery, assault, or medical malpractice (professional negligence) claims alleged against him. Accordingly, the allegation that Fakhri "abandoned" plaintiff is both impertinent and immaterial, and page 4, lines 17–20, of the SAC are hereby stricken.

### 2. *Claims for Punitive Damages From Moving Defendants*

The Ninth Circuit Court of Appeals has clarified that "Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone,* 618 F.3d at 971. Here, the MTS argues that punitive damages are unavailable as a matter of law on grounds that plaintiff has not complied with statutory procedural requirements enabling her to properly seek such damages. (MTS at 16–17 (citing Cal.Code Civ. Proc. § 425.13 (requiring leave of court to seek punitive damages against medical providers); *Central Pathology,* 3 **Cal.**4th at 192, 10 Cal.Rptr.2d 208, 832 P.2d 924 (construing Cal.Code Civ. Proc. § 425.13 as encompassing punitive damages requests arising from claims sounding in negligence *and* in tort).) Accordingly, the motion to strike appears to run afoul of Rule 12(f)'s limits as described by the court in *Whittlestone. See Whittlestone,* 618 F.3d at 971. However, courts sometimes construe such deficient motions to strike as motions to dismiss and analyze them accordingly, and the undersigned will do so here. [18]

*21  Construing the motion to strike "punitive damages" claims against moving defendants as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), moving defendants are correct that **California** Code of Civil Procedure § 425.13 requires a plaintiff to obtain leave of court before claiming punitive damages against medical providers. Defendants are also correct that the court in *Central Pathology* construed the requirements of that section to apply to both negligence *and* tort claims against medical providers. *Central Pathology,* 3 **Cal.**4th at 192, 10 Cal.Rptr.2d 208, 832 P.2d 924. Defendants are also correct that a review of the court's docket confirms that plaintiff has not complied with **California** Code of Civil Procedure § 425.13 and has not obtained leave of court with respect to the punitive damages she seeks from moving defendants.

However, defendants' arguments overlook the fact that this case is proceeding in federal court and is subject to the Federal Rules of Civil Procedure—not the procedural rules governing actions proceeding in California state courts. California Code of Civil Procedure § 425.13 is a procedural rule that does not necessarily apply in this federal case.

Moreover, moving defendants failed to cite to any authorities directly on this point. *E.g., Jackson v. East Bay Hosp.,* 980 F.Supp. 1341, 1353 (N.D.Cal.1997) (where plaintiff claimed punitive damages under a federal statute that incorporates state substantive law on determination of damages, the court denied a motion to strike punitive damages claim against medical providers in federal court "[s]ince section 425.13 is a procedural requirement and does not warrant special exception, it is therefore inapplicable"); *contra Allen v. Woodford,* No. 1:05–CV–01104–OWW–LJO, 2006 WL 1748587, at *22 (E.D. Cal. June 26, 2006) (not reported) (granting motion to strike punitive damages and holding that, because Section 425.13 is so "intimately bound up" with the substantive law of the underlying state law claims arising from the rendering of professional medical services, it must be applied by federal courts when addressing the issue of punitive damages against medical providers for state law claims.); *Thomas v. Hickman,* No. CV F 06–0215 AWI SMS, 2006 WL 2868967, at *38–41 (E.D.Cal. Oct.6, 2006) (not reported) (holding that "Plaintiff's causes of action for professional negligence, intentional infliction of emotional distress, fraud and misrepresentation are directly related to the manner in which Defendants provided their professional services. These claims arise out of the professional negligence of health care providers. Plaintiff must petition the court for punitive damages pursuant to Section 425.13 for such relief under her state law claims.") (citing *Allen,* 2006 WL 1748587 at *20–22; *Jackson,* 980 F.Supp. at 1352.)

Like the claims in *Allen* and *Thomas,* in this case plaintiff's punitive damages claims arise from state law claims and are directly related to the manner in which moving defendants provided their professional services. *See Allen,* 2006 WL 1748587 at *20–22; *Thomas,* 2006 WL 2868967, at *40– 41. Therefore, those two cases provide more guidance than the *Jackson* case, which involved a punitive damages claim under a federal statute incorporating state substantive law regarding damages. *See Thomas,* 2006 WL 2868967, at – 41. Accordingly, plaintiff must petition the court for punitive damages as against moving defendants pursuant to Section

425.13 for such relief under her state law claims. *See Thomas,* 2006 WL 2868967, at *41.

**\*22** Therefore, the motion to strike plaintiff's punitive damages claims against moving defendants is construed as a motion to dismiss and the motion is granted on this issue. All of plaintiff's claims and prayers for punitive damages as against the moving defendants are dismissed without prejudice. If plaintiff wishes to pursue punitive damages from moving defendants Fakhri and Jackson, plaintiff will have 30 days from the date of this order to file documents attempting to make the "substantial probability" showing required under California Code of Civil Procedure § 425.13.

### 3. *Claims for Attorneys' Fees and Costs Under the Federal Civil Rights Act*

The Federal Civil Rights Act provides for an award of attorney fees for plaintiffs who prevail in actions brought under 42 U.S.C. § 1983 ("Section 1983"). The statutory section permitting such a fee award in any Section 1983 "action or proceeding" is 42 U.S.C. § 1988 ("Section 1988"). Because plaintiff has only alleged state law claims as against moving defendants (MTS at 15–16), moving defendants seek to strike plaintiff's claims for attorneys' fees and costs insofar as those requests are "pursuant to 42 U.S.C. § 1983." (SAC ¶ 31.) According to moving defendants, plaintiff is not entitled to recover attorney fees or costs from them as a matter of law, because Section 1988 only embraces "violations of the United States Constitution and/or federal law" and "violations of state and/or common law do not support claims for relief under that section." (MTS at 15–16.) As discussed above, because the motion seeks to strike a claim for fees and costs on grounds that such fees and costs are unavailable as a matter of law, the motion runs afoul of Rule 12(f)'s limits as described by the court in *Whittlestone. See Whittlestone,* 618 F.3d at 971. However, also as described above, courts sometimes construe such deficient motions to strike as motions to dismiss and analyze them accordingly, and the undersigned will do so here.

In support of moving defendants' argument that plaintiff cannot invoke the Federal Civil Rights Act to collect attorney fees when only pendent *state law* claims are alleged as against them, moving defendants cite several cases but none are on point for the issue. (MTS at 16 (citing *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Moore v. Kuspar,* 465 F.2d 256, 258–59 (7th Cir.1972); and *Lecrenski Bros., Inc. v. Johnson,* 312 F.Supp.2d 117, 120–

21 (D.Mass.2004).) At the pages cited, these three cases address a federal court's jurisdiction in Section 1983 cases, *not* the availability of attorney fees under Section 1988 for supplemental or pendant state law claims in Section 1983 cases. Indeed, the word "fees" does appear in any of these cases.

Absent authority to the contrary, the undersigned cannot conclude as a matter of law that attorney fees may not be awarded as against moving defendants pursuant to Section 1988 in the event plaintiff were successful upon her pendant state law claims against those defendants. Indeed, some courts have interpreted the Federal Civil Rights Act to provide for an award of attorneys' fees upon successful pendant state law claims even where a federal constitutional claim ultimately fails. *E.g., Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (clarifying that attorney's fees under Section 1988 are available in cases "in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim"); *Milwe v. Cavuoto,* 653 F.2d 80, 84 (C.A.Conn.1981) (holding that attorney fees may be awarded as against a defendant found to have committed the state law tort of assault, a claim pendant to the Section 1983 claim, even though defendant was not found to have committed a violation of federal constitutional law).

*23 Moreover, the Ninth Circuit Court of Appeals has held that, when the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under Section 1988. *Carreras v. City of Anaheim,* 768 F.2d 1039, 1050 (9th Cir.1985) *abrogated on other grounds by Los Angeles Alliance for Survival v. City of Los Angeles,* 22 Cal.4th 352, 93 Cal.Rptr.2d 1, 993 P.2d 334 (2000); *cf. Mateyko v. Felix,* 924 F.2d 824, 828–29 (9th Cir.1990) (denying Section 1988 fees for successful pendant state law claims *if* plaintiff "loses on his federal claim").

While there might be case law supporting moving defendants' argument, they have not provided any to the undersigned. Absent such authority, the undersigned cannot find that Section 1988 attorney fees can *never* be awarded as against moving defendants as a matter of law on grounds that no federal claims are alleged as to those defendants. Accordingly, the motion to strike plaintiff's claims for attorneys's fees and costs is construed as a motion to dismiss, and the motion is denied.

## C. *Motion for a More Definite Statement*

Moving defendants seek a more definite statement under Federal Rule of Civil Procedure 12(e) in the event the undersigned does not grant their motion to dismiss in full. (MTD at 17.) While it contains few non-conclusory, factual allegations relating to the moving defendants, the SAC nonetheless provides moving defendants with adequate notice of the basis for the claims against them. While the SAC is far from a model of clarity, it does state claims against moving defendants as described above. The proper avenue for eliciting additional detail is discovery, not a Rule 12(e) motion. *See e.g., Musacchio,* 695 F.Supp. at 1060; *Famolare,* 525 F.Supp. at 949; *Beery,* 157 F.R.D. at 480. Accordingly, the moving defendants' motion for a more definite statement is denied.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The motion to dismiss (Dkt. No. 73–2 at 1–14) filed by moving defendants Jackson and Fakhri is granted in part and denied in part.

   a. As to the argument that this court lacks subject matter jurisdiction with respect to moving defendants Jackson and Fakhri, the motion is denied.

   b. As to alleged claims for violations of California Civil Code § 43, the motion denied as to Fakhri.

   c. As to alleged claims for violation of California Civil Code § 52. 1, the motion to dismiss is denied as to Fakhri.

   d. The motion to dismiss the claim for medical battery is denied.

   e. The motion to dismiss the claim for intentional infliction of emotional distress is denied.

   f. The motion to dismiss claims for medical malpractice (professional negligence) is denied.

2. The motion for a more definite statement (Dkt. No. 73–2 at 17) is denied.

3. The motion to strike (Dkt. No. 73–2 at 15–17) is granted in part and denied in part.

   a. The allegation that Fakhri "abandoned" plaintiff (SAC ¶ 6 (page 4, lines 17–20)) is stricken as impertinent and immaterial.

**\*24** b. The motion to strike punitive damages claims against moving defendants Jackson and Fakhri is construed as a motion to dismiss those claims under Rule 12(b)(6) and such motion to dismiss is granted. Plaintiff's claims and prayers for punitive damages as against the moving defendants are dismissed without prejudice. If plaintiff wishes to pursue punitive damages from moving defendants Fakhri and Jackson, she will have 30 days from the date of this order to file documents attempting to make the "substantial probability" showing required under **California** Code of Civil Procedure § 425.13.

c. The motion to strike plaintiff's claims for attorneys's fees and costs as against moving defendants is construed as a motion to dismiss those claims under Rule 12(b)(6) and such motion to dismiss is denied.

4. This matter is set for status conference on *Thursday, May 19, 2011,* at 10:00 a.m., before the undersigned. The parties are to comply with the local rules regarding the filing of a timely joint status report.

Additionally, IT IS HEREBY RECOMMENDED that:

1. The motion to dismiss the claim for violation of **California** Civil Code § 43 be granted as to moving defendant Jackson, and the claim be dismissed with prejudice as against her;

2. The motion to dismiss claims for violations of **California** Civil Code §§ 45–46 be granted as to moving defendants Jackson and Fakhri, and the claims be dismissed with prejudice as against them;

3. The motion to dismiss claims for violations of **California** Civil Code §§ 51 and 51.7 be granted as to moving defendants Jackson and Fakhri, and the claims be dismissed with prejudice as against them;

4. The motion to dismiss claims for violations of **California** Civil Code §§ 54, 54. 1, and 54.3 be granted as to moving defendants Jackson and Fakhri, and those claims be dismissed with prejudice as against them;

5. The motion to dismiss claims for violation of **California** Civil Code § 52.1 be granted as to moving defendant Jackson, and the claim be dismissed with prejudice as against her;

6. The motion to dismiss the claim for violation of **California** Civil Code § 1708 be granted as to moving defendants Jackson and Fakhri, and that the claim be dismissed with prejudice as against them.

7. The motion to dismiss the "negligence per se" claim be granted as to moving defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them;

8. The motion to dismiss the false imprisonment claim be granted as to moving defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them; and

9. The motion to dismiss the conversion claim be granted as to moving defendants Jackson and Fakhri, and the claim be dismissed with prejudice as against them.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. *Id.; see also* E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir.1998); *Martinez v. Ylst,* 951 F.2d 1153, 1156–57 (9th Cir.1991).

**\*25 IT IS SO ORDERED AND RECOMMENDED**

Footnotes

1     This action proceeds before the undersigned pursuant to Eastern District of **California** Local Rule 302(c)(21) and 28 U.S.C. § 636(b) (1), and was reassigned by an order entered February 9, 2010. (Dkt. No. 36.) Pursuant to the local rules, this matter was assigned to the undersigned because plaintiff did not initially identify to the court the fact that she is a licensed attorney in **California**. Local Rule 302(c)(21) provides that where a pro se litigant later becomes represented by an attorney, that such an action will be referred back to the district judge. It is not clear that this local rule governs the treatment of this action because plaintiff is still acting in pro

per. In the interests of judicial economy, the undersigned will proceed by way of findings and recommendations which will then be reviewed by the district judge in this action.

2    Defendants County of Sacramento and Dorian Kittrell filed a separate motion to dismiss the SAC. (Dkt. No. 72.) Defendant American Medical Response also filed a separate motion to dismiss and partially strike the SAC. (Dkt. No. 77.) The remaining defendants filed answers to plaintiff's SAC, namely: California Forensic Medical Group, Inc., Elaine Hustedt, Dan Hustedt, Taylor Fithian, M.D. (Dkt. No. 69), Choice Hotels International, Inc., Sac City Lodging Partners, LLC, Eva Cooper, Myrna Yao (Dkt. No. 70), City of Rocklin, Susan Davis, Darrell Jantz, Jennifer Collins, Mark Siemens, Carlos Urrutia, Thomas J. Platina (Dkt. No. 74), Placer County, Edward N. Bonner, Mike Seipert and Cheryl Hamilton (Dkt. No. 75).

3    At several hearings in this action, plaintiff confirmed her status as an active member of the California Bar. (E.g., Dkt. Nos. 60, 117.)

4    The parties are familiar with the other allegations in the complaint and they will only be recited as relevant to the grounds discussed herein.

5    Pro se pleadings are typically held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardue,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). With respect to pleadings by pro se parties, the court must construe such a pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give the plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. *See Lopez v. Smith,* 203 F.3d 1122, 1130–31 (9th Cir.2000) (en banc). However, during a recent hearing, plaintiff confirmed to the court that she is, in fact, an attorney currently licensed to practice law in California. (E.g., Dkt. No. 117.) Therefore, it makes little sense to hold the SAC to a "less stringent" standard in this case. Moreover, plaintiff has not argued that a less stringent standard should apply to her. To date, this court has given plaintiff several opportunities to amend her pleading and otherwise treated her as a typical, non-attorney pro se party (by, for instance, permitting her to make arguments in hearings for which she failed to file any written oppositions despite Eastern District Local Rule 230(c)). Plaintiff has admitted that she is a licensed attorney in California. The undersigned has already informed plaintiff that her pleading will no longer be held to a less stringent, non-attorney standard. (E.g., Dkt. No. 60.)

6    The court may consider certain limited evidence on a motion to dismiss. In ruling on a motion to dismiss pursuant to Rule 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899–900 (9th Cir.2007) (citation and quotation marks omitted). "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) as *amended* b y 275 F.3d 1187 (9th Cir.2001); *accord Makua v. Gates,* Civil No. 09–00369 SOM/LEK, 2009 WL 3923327, at *3 (D.Haw. Nov.19, 2009) (not reported) ("... the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint") (citing *Sprewell* ).

7    Defendants cite one out-of-circuit case in support of their argument for dismissal for lack of jurisdiction. (Dkt. No. 73–2 at 3 (citing *Serrano–Moran v. Grau–Gaztambide,195* F.3d 68, 69–70 (1st Cir.1999).) In *Serrano–Moran,* the claim was brought by the parents of a mentally impaired individual who was allegedly kidnapped and beaten by four police officers, hospitalized the next day, and died a few days later, allegedly as a result of beatings and medical malpractice. *Serrano–Moran,* 195 F.3d at 69–70. The appellate court affirmed the district court's finding that the claims against medical defendants did not share a common nucleus of operative facts with the claims against police defendants because the facts relevant to the civil rights claim were entirely separate from the facts relevant to the malpractice claim, and because there was a "temporal break" between the two sets of facts. (*Id.*) The facts of *Serrano–Moran* are similar to this case but are ultimately distinguishable. While the court in *Serrano–Moran* found that "whether or not the police violated [the decedent's] civil rights has nothing to do with whether the hospital and doctors conformed to the requisite standard of care," that is not the case on the pleaded facts at issue here. Here, the propriety of the mental health treatments that the moving defendants allegedly administered to plaintiff are intertwined with the propriety of plaintiff's arrest, detention, and the reasons plaintiff was transferred to SCMHTC into the care of moving defendants. The facts relevant to plaintiff's federal claims against the police officers are not "entirely separate" from the facts relevant to her claims against the moving defendant physicians. *See Hensley v. U.S,* No. C04–302P, 2006 WL 118248, at *2–3 (W.D.Wash. Jan.13, 2006) (not reported) (discussing *Serrano–Moran,* factually distinguishing it, and clarifying that supplemental jurisdiction exists unless facts relevant to state claims are "entirely separate" from facts relevant to federal claims, as "a loose factual connection between the claims is generally sufficient").

8    The court's exercise of supplemental jurisdiction is also subject to certain conditions that are inapplicable in this case and were not advanced by defendants. See 28 U.S.C. 1367(c).

9    Moving defendants have not argued that the SAC fails to state a claim invoking at least one federal law as against at least one defendant.

10   Where, as here, defendants have fair notice of the nature of the *claim,* the complaint need not even allege the legal theory on which recovery is being sought. *Crull v. GEM Ins. Co.,* 58 F.3d 1386, 1391 (9th Cir.1995). A claim is the "aggregate of operative facts which give rise to a right enforceable in the courts ." *Bautista v. Los Angeles County,* 216 F.3d 837, 840 (9th Cir.2000). It is not necessary, at the pleading stage, that plaintiff break out all of her legal theories into separate "causes" of action with precise accompanying facts and law as to each one, for defendants cannot reasonably complain of failing to understand the nature of plaintiff's complaint. *See NAACP v. American Family Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992) (criticizing the practice of utilizing different legal labels in separate counts and stating that "[o]ne set of facts producing injury creates one claim for relief, no matter how many laws are broken").

11   "Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Cal. Civ.Code § 43.

12   "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Cal. Civ.Code § 1708.

13   "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action. [ ... ] If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." Cal.Code Civ. Proc. § 354(a), (d).

14   At most, the SAC conclusorily alleges that "plaintiff timely served notices of her intent to commence litigation for medical malpractice against the Medical Defendants ... thereby extending the statute of limitations pursuant to California Code of Civil Procedure § 364." (SAC ¶ 89.) Whether plaintiff did anything in a "timely" manner is a legal conclusion, and therefore that element of the allegation is disregarded here. *See Iqbal,* 129 S.Ct. at 1949–50.

15   Defendants have not requested judicial notice of any document confirming the service date of the NIFs, and regardless, it is unlikely that any such document would be suitable for judicial notice.

16   However, this issue may be suitable for a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

17   Unlike plaintiff's negligence claims, her "false imprisonment" claim is not potentially tolled by the service of NIFs, and therefore, the unresolved factual issues regarding those NIFs do not prevent the dismissal of the false imprisonment claim. (Cal.Code Civ. Proc. § 340(c); e.g. *Noble v. Superior Court,* 191 Cal.App.3d 1189, 1190, 1192, 237 Cal.Rptr. 38 (1987) (where plaintiff alleging negligence and battery by her surgeon and served a NIF upon him, the court dismissed plaintiff's battery claim as time-barred and held that the "tolling provisions of [Section 364(d) ] apply only to negligence causes of action and not to those based upon intentional torts or other theories as to which the limitations period has run.")

18   *See, e.g., Arrad v. City of Fresno,* No. 10–cv–01628 LJO SMS, 2011 WL 284971, at *2 n. 4 (E.D.Cal. Jan.26, 2011) (unpublished) (construing defendant's motion to strike punitive damages as a motion to dismiss in light of the holding in *Whittlestone* ); *Angel v. Golden Valley Transport, LLC,* No. 10–cv–890 LJO DLB, 2011 WL 201465, at *2 (E.D.Cal. Jan.20, 2011) (unpublished) (noting that a motion to strike portions of plaintiff's request for statutory penalties is improper and instead construing the motion as a motion to dismiss).

---

End of Document                                          © 2013 Thomson Reuters. No claim to original U.S. Government Works.